UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RAVEN REGULUS,<br><br>Plaintiff,<br><br>v.<br><br>ASCENSION LONG TERM DISABILITY PLAN and SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,<br><br>Defendants. | ) | Case No. 4:25-cv-00616-SRC |

**Memorandum and Order**

Raven Regulus has sought long-term disability benefits for years, but the Court cannot grant her the relief that she seeks. She sued Ascension Long Term Disability Plan and Sedgwick Claims Management Services for denying her LTD benefits under the Employee Retirement Income Security Act. Doc. 40-1 at 1 (The Court cites to page numbers as assigned by CM/ECF.). Both parties moved for summary judgment, docs. 48, 51, and the Court grants it in Ascension and Sedgwick's favor.

## I. Background

The Court finds the following facts undisputed for purposes of summary judgment. Regulus participated in Ascension's LTD plan, which delegated claim administration to Sedgwick. Docs. 40-1 at 1, 45 at 5. She sued Ascension and Sedgwick under ERISA for denying her LTD benefits claim and appeal. Doc. 40-1 at 1.

### A. Regulus's LTD plan

Regulus's plan establishes eligibility for LTD:

> ***Disability/Disabled*** means that due to an Injury or Sickness which is supported by objective medical evidence, . . . the Participant requires and is receiving from a Licensed Physician regular, ongoing medical care and is following the course of treatment recommended by the Licensed Physician; and . . . [t]he Participant is unable to perform: . . . after the first 24 months of Benefit payments or eligibility for Benefit payments, any work or service for which the Participant is reasonably qualified taking into consideration the Participant's training, education, experience and past earnings.

Doc. 45 at ¶ 7. The plan conditions the benefits on proving disability:

> When a Participant provides Proof satisfactory to the Claims Administrator that the Participant is Disabled, the Plan will pay a monthly Benefit to the Participant after completion of the Elimination Period . . . The monthly Benefit will be paid as long as the Disability continues, provided that Proof of continued Disability satisfactory to the Claims Administrator is submitted to the Claims Administrator upon request. . . .
>
> Disability benefit payments from the Plan will end when any of the following occurs: . . . You no longer satisfy the Plan's definition of Disability. . . . [or] [y]ou fail to furnish proof of Disability satisfactory to the Claims Administrator at its discretion, or submit other required documentation or medical information about your Disability, or you refuse to undergo a medical exam upon request. . . .
>
> Proof means objective medical evidence, which in the discretion of the Claims Administrator, substantiates the existence of a Disability.

*Id.* at ¶¶ 10–13.

### B. Regulus's claim history

Regulus worked at Amita Health as a behavioral-health counselor, but she stopped working in 2021 after reporting symptoms that "she attributed to mold and toxin exposure during workplace renovations." Doc. 45 at ¶¶ 15–19. Her medical providers excused her from work. *Id*. at ¶ 20. She received short-term disability benefits from 2021 to 2022, and then Sedgwick approved LTD benefits from 2022 to March 2024. *Id*. at ¶¶ 21–26. Sedgwick then informed Regulus that to continue receiving LTD after March 2024, the plan required her to prove disability from "performing any work or service [for] which she is reasonably qualified," also known as the plan's "[a]ny [o]ccupation" definition. *Id.* at ¶ 27.

So Sedgwick sought more information leading up to March 2024 to determine if Regulus would still qualify for LTD. *Id.* at ¶¶ 29–63. It requested more medical information from her and her doctors, informing her when it considered the submitted information incomplete and asking for more provider notes. *Id.* at ¶¶ 29–44. And even after Sedgwick determined that Regulus's medical information didn't establish she couldn't work in "any occupation" beyond March 2024, it recommended yet another medical examination and extended her LTD benefits to April 30, 2024, to allow for the exam. *Id.* at ¶¶ 45–47, 50–53.

The exam by Dr. Liana Palacci, who was board certified in internal medicine, found that Regulus "should be able to perform sedentary work for any occupation after completing her current course of physical therapy." *Id.* at ¶ 56. Sedgwick also commissioned two vocational evaluations to assess Regulus's employability in her geographic labor market for relevant sedentary work. *Id.* at ¶¶ 58–63. The evaluations found that there were sedentary occupations appropriate for her geographic area, fitting her professional background and training, with "expected wage ranges" consistent with her "vocational profile." *Id.* In June 2024, Sedgwick informed Regulus that she didn't qualify for LTD beyond April 30, 2024, because she "did not meet the Any Occupation definition of disability based on the medical examination findings and vocational evaluations." *Id.* at ¶ 64.

Regulus appealed the decision, so Sedgwick sought even more information. *Id.* at ¶¶ 66, 78–80. Regulus submitted 140 additional pages of medical records on appeal, and Sedgwick sent the entire claim file for new medical examinations by two additional doctors: Dr. Henry Richardson, who was board certified in physical medicine and rehabilitation and pain management, and Dr. Sandy Lee, who was board certified in rheumatology and internal medicine. *Id.* at ¶¶ 67–69. Dr. Richardson disagreed with Regulus's "treating provider that she

could not return to work until her treatment was completed" and agreed with Dr. Palacci that Regulus "would be capable of working with restrictions." *Id.* at ¶¶ 70–72. Dr. Lee similarly disagreed with Regulus's "treating providers' opinion of [Regulus's] functional impairment due to the paucity of provider documentation provided," finding "an absence of provider clinic notes to support . . . functional incapacity." *Id.* at ¶ 73. Dr. Lee opined that "the provided medical evidence does not support functional impairment that would affect the claimant's ability to perform her regular duties at her occupation." *Id.*

Sedgwick again denied the LTD claim on appeal. *Id.* at ¶¶ 74–80. In August 2024, Sedgwick told Regulus that it would render a decision on her appeal unless she submitted more information or asked for additional time to do so. *Id.* at ¶ 74. Regulus "stated she did not have and would not submit any additional information[,] asked that the final decision on appeal be made that day," and "affirmatively waived her right to the 21-day comment period." *Id.* at ¶¶ 75, 77. Sedgwick then notified her "by letter that it determined [she] did not qualify for LTD benefits and thus upheld the termination of her benefits based on a review of all [her] submitted medical records, the medical examinations performed by Drs. Richardson and Lee," and the vocational evaluations. *Id.* at ¶ 78. The letter "specified the definition of Disability under the Plan and detailed the documents reviewed and considered in making the determination to uphold its decision to deny [Regulus's] claim on appeal." *Id.* at ¶ 79.

After Sedgwick denied her appeal, Regulus sued Ascension and Sedgwick. Doc. 1. Both parties filed motions for summary judgment, which the Court now addresses. Docs. 48, 51.

## II. Standards

### A. Summary-judgment standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 & n.4 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. ERISA standard

Under ERISA, a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan,

or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). While ERISA itself does not specify a standard of review, the Supreme Court has held that "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Cash v. Wal-Mart Grp. Health Plan*, 107 F.3d 637, 640–41 (8th Cir. 1997). "If the plan gives such discretionary authority, the court reviews the plan administrator's decision for abuse of discretion." *Cash*, 107 F.3d at 641 (citing *Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir. 1996), *abrogated on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)).

Under the abuse-of-discretion standard, the Court applies a deferential standard of review to the administrator's plan interpretation and fact-based determinations. *Donaho*, 74 F.3d at 898. The Court determines only "whether the [plan administrator's] decision was 'reasonable.'" *Ruessler v. Boilermaker-Blacksmith Nat'l Pension Tr. Bd. of Trs.*, 64 F.4th 951, 959 (8th Cir. 2023) (citing *Roehr v. Sun Life Assurance Co. of Can.*, 21 F.4th 519, 525 (8th Cir. 2021)). And the Court "must uphold [a plan administrator's] decision so long as it is based on a reasonable interpretation of the [p]lan and is supported by substantial evidence." *Id.* (first alteration in original) (quoting *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016)).

In this analysis, the court must not "substitute [its] own weighing of the evidence for that of the administrator." *McIntyre v. Reliance Standard Life Ins. Co.*, 73 F.4th 993, 1000 (8th Cir. 2023) (quoting *Gerhardt v. Liberty Life Assurance Co. of Bos.*, 736 F.3d 777, 780 (8th Cir. 2013)). Rather, "[a] decision is reasonable if a reasonable person *could* have reached a similar

decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Id.* (quoting *Ingram*, 812 F.3d at 634). "Only when the evidence relied on is overwhelmed by contrary evidence may the court find an abuse of discretion." *Id.* (quoting *Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1142 (8th Cir. 2016)).

**III. Discussion**

The parties agree that the Court should apply the abuse-of-discretion standard of review and determine if Sedgwick's decision was arbitrary and capricious. Doc. 49 at 2–3; doc. 53 at 2. The Court therefore reviews the decision by this standard. *See Kutten v. Sun Life Assurance Co. of Can.*, 759 F.3d 942, 944 (8th Cir. 2014) ("The parties agree that the [p]lan grants [the administrator] discretionary authority to construe its terms. We therefore review [the administrator's] decision for abuse of discretion." (citing *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998–99 (8th Cir. 2005) (en banc))).

Under the undisputed facts, Sedgwick did not abuse its discretion. *See Ziegler v. Sun Life Assurance Co. of Can.*, No. 4:22-cv-01115-SRC, 2024 WL 3874529, at *8–9 (E.D. Mo. Aug. 19, 2024). Sedgwick had discretion to weigh conflicting evidence, evaluate different medical opinions, and make benefits determinations. *Zaeske v. Liberty Life Assurance Co. of Bos.*, 901 F.3d 944, 950 (8th Cir. 2018) ("As a general rule, a plan administrator has discretion to choose between two reliable but conflicting medical opinions." (citing *Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001))); *see also Midgett v. Washington Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) ("[A] plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial." (quoting *Dillard's Inc. v. Liberty Life Assurance Co. of*

*Bos.*, 456 F.3d 894, 899–900 (8th Cir. 2006))). As long as Sedgwick's decision was not arbitrary and capricious, the Court must defer to it. *Midgett*, 561 F.3d at 896–97 (citation omitted); *see also Ruessler*, 64 F.4th at 959.

Here, Regulus fails to show that Sedgwick's decision was arbitrary and capricious, and sufficient evidence supported the denial of benefits. *See* doc. 45 at ¶¶ 56–63, 69–73. Sedgwick did what the law commits to claim administrators: It weighed evidence and came to a decision that has support in the record. *See id.*, 561 F.3d at 897. Its denial letters for the claim and appeal detailed the plan's definitions of disability, the applicable standards, and the records it reviewed. Doc. 45 at ¶¶ 64–65, 78–79; doc. 46-2 at 221–23; doc. 46-7 at 6–9. In coming to its decision, it reviewed the May 2024 exam, the opinions of Drs. Richardson and Lee, the vocational analyses, and more than seventy records from more than forty doctors, nurses, physical therapists, and other medical professionals. *Id.*

Sedgwick obtained the opinions of three reviewing doctors, and each doctor reviewed Regulus's file and opined that she lacked a disability qualifying for LTD. Doc. 45 at ¶¶ 56–63, 69–73. Drs. Richardson and Lee reviewed her providers' assessments, disagreed with her providers, and simply evaluated her disability differently than they did. *Id.* at ¶¶ 70–73. Sedgwick wasn't required to favor Regulus's doctors' opinions just because they were her treating physicians. *See Zaeske*, 901 F.3d at 950 ("A plan administrator may even prefer the opinion of its own consulting physician over that of an applicant's treating physician." (citing *Nord*, 538 U.S. at 829–34)). And even if some medical providers come to a different conclusion, the Court must defer to Sedgwick's decision. *McIntyre*, 73 F.4th at 1000–01; *see also Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1051–53 (8th Cir. 2011).

The parties dispute several points while maintaining no genuine dispute of material fact exists, and the Court finds that none of these disputes changes the outcome. *See* docs. 48, 51. Regulus makes two main objections. She argues Sedgwick "refused to credit [her] medical evidence as legally sufficient evidence of disability, especially in light of the opinions of the treating physicians." Doc. 53 at 3. She also argues that Sedgwick's notices failed to inform her what was needed to perfect her claim or appeal and prove her disability, as required under ERISA. *Id.* at 5.

First, Regulus argues Sedgwick refused to credit her treating physicians' opinions as sufficient evidence. *Id.* at 3. For example, she states that she provided "many statements from her treating physicians about her conditions and limitations," *id.* at 3, and that Sedgwick ignored Dr. Palacci's examination, doc. 56 at 2. In response, Ascension and Sedgwick argue that Sedgwick considered all the medical evidence Regulus provided and "justifiably relied on the opinions of . . . Drs. Lee and Richardson," who "agreed the medical record did not support a finding that [Regulus] was functionally impaired from performing Any Occupation—even if those opinions conflicted with the opinions of [Regulus's] treating physicians or Dr. Palacci." Docs. 54 at 4; 58 at 4. The Court agrees with Ascension and Sedgwick. For the reasons stated above, Sedgwick and its reviewing doctors acted within their discretion, even when disagreeing with Regulus's providers as to the extent of her disability under the plan. *See Ziegler*, 2024 WL 3874529, at *8–9.

Second, Regulus argues that Sedgwick failed to adequately inform her how to prove her disability per 29 C.F.R. § 2560.503-1(g). She states that, even though "ERISA requires that claim administrators inform a claimant of what is needed to perfect their claim or appeal," doc. 53 at 5, "at no point was [she] informed of what was needed to prove that her constellation of

impairments was disabling," *id.* at 8, and that Sedgwick "fail[ed] to specify what proof was required to prove her claim," doc. 56 at 2. Ascension and Sedgwick respond that, "ERISA requires notice of claim deficiencies and a meaningful opportunity to respond; it does not require exhaustive guidance or procedural perfection." Doc. 54 at 8.

The Court finds that the notice was sufficient. Regulus focuses on two particular communications: the Nurse Case Manager's notice that "[g]iven the lack of supporting medical information available disability is not supported beyond 03/13/2024," and the June 2024 denial letter stating, "she should submit 'updated objective medical documentation from recent healthcare provider visits demonstrating [her] inability to perform any work or service for which [she is] reasonably qualified.'" Doc. 53 at 5–7. But courts "consider all the plan administrator's communications to the insured in deciding whether it satisfied ERISA's notice requirements," not just any one (or two) communications. *Kleinsteuber v. Metro. Life Ins. Co.*, 176 F.4th 1088, 1093 (8th Cir. 2026). And Regulus's quote from the June 2024 denial letter abridges most of Sedgwick's lengthy notice on what information to provide on appeal:

> If you disagree with this determination, provide updated objective medical documentation from recent healthcare provider visits demonstrating your inability to perform any work or service for which you are reasonably qualified. . . . Attach all information not previously submitted that you want reviewed for appeal [including] . . . [(A)] Medical information from your healthcare provider(s) that documents and shows how your condition prevents you from doing the essential functions of your job [such as] [w]ritten documentation from your healthcare provider(s) of their observation(s) and finding(s) from your examination(s) and/or treatment(s)[;] [o]ffice visit note(s) from each healthcare provider(s) providing care during your absence for which benefits were denied[;] [l]ab report(s), radiology report(s), or report(s) of other diagnostic studies[;] [t]herapy note(s), and/or any behavioral health assessment(s) . . . [and [(B)] Any other objective medical evidence substantiating the existence of a Disability as defined in the Plan[;] Any other documentation which may support your claim for disability benefits under the [plan].

Doc. 46-2 at 222–24. Considering all the communications describing Sedgwick's process, including the June 2024 denial letter, the Court finds the notice sufficient.

Thus, the Court finds that Sedgwick did not abuse its discretion and finds in favor of Ascension and Sedgwick. Having considered the factors set forth in *Johnson*, the Court declines to award attorneys' fees to Ascension or Sedgwick. *Johnson Tr. of Operating Eng'rs Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 525 (8th Cir. 2020).

## IV. Conclusion

Accordingly, the Court grants Ascension and Sedgwick's [48] Motion for Summary Judgment, dismisses this case with prejudice, denies Ascension and Sedgwick's request for attorneys' fees, and denies Regulus's [51] Motion for Summary Judgment. A separate judgment accompanies this Memorandum and Order.

So ordered this 3rd day of November 2026.

SLR.CR

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE